**UNITED STATES of America,**
**Appellee,**

v.

**Hector PENA, aka Junior Perez–**
**Cabral; Plinio Guerra,**
**Defendants.**

**Jesus Mueses, aka Eddy Paredes,**
**Defendant–Appellant.**

**Docket No. 96–1243.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 15, 2000.
Decided: Nov. 22, 2000.

Julia Pamela Heit, New York, NY, for defendant-appellant.

Marc L. Mukasey, Assistant United States Attorney, New York, NY, for Mary Jo White, United States Attorney for the Southern District of New York (Elizabeth Glazer on the brief), for appellee.

Before: CARDAMONE and CALABRESI, Circuit Judges, and HAIGHT, District Judge.[1]

PER CURIAM:

## I. BACKGROUND

Jesus Mueses ("defendant") was indicted on two counts of a multi-count, multi-defendant indictment, charging him with conspiracy to distribute and to possess with

---

1. The Honorable Charles S. Haight, Jr., Senior United States District Judge for the Southern District of New York, sitting by designation.

intent to distribute heroin in violation of 21 U.S.C. § 846 and with possession with intent to distribute heroin in violation of 21 U.S.C. §§. 812 and 841(a)(1) & (b)(1)(C).[2] After he rejected two offers of a plea bargain[3]—involving sentencing recommendations of 24 to 30 and 27 to 33 months respectively—defendant's case went to trial before a jury in the United States District Court for the Southern District of New York (Kaplan, *District Judge*). The jury convicted defendant on both counts, and on March 25, 1996, the court sentenced him to 78 months imprisonment, a four-year term of supervised release, a $1000 fine, and the requisite special assessments.

Although defendant's trial counsel did not move to be relieved as counsel, he failed to file a notice of appeal on defendant's behalf. Defendant, therefore, filed a timely notice of appeal *pro se* on April 3, 1996. Without the assistance of counsel, however, defendant was unable to perfect his appeal, and on July 16, 1996, this court dismissed the appeal for failure to file a brief in accordance with the court's scheduling order.

On July 19, 1997, defendant filed a petition in the district court seeking habeas corpus pursuant to 28 U.S.C. § 2255, in which he argued that he had received ineffective assistance of counsel both at trial and on direct appeal. The precise grounds for defendant's claim of ineffectiveness of counsel at trial changed over the course of the habeas proceedings,[4] but the critical elements of defendant's claim, and the issues addressed by the court below, were that, leading up to the trial, defendant's counsel had (1) failed adequately to make clear the sentencing regime that faced defendant on conviction (including the sentencing guidelines and the statutory 5 year mandatory minimum), (2) failed to explain the plea agreements defendant was offered (specifically, that defendant spoke little English and that his counsel failed to translate the agreements into Spanish), and (3) failed to point out that, if convicted, defendant faced a potential sentence much higher than that recommended in the plea agreements. Defendant's claim that his counsel was ineffective on appeal focused on counsel's failure to file or perfect defendant's direct appeal.

Judge Kaplan held an evidentiary hearing, at which both defendant and the counsel he accused of ineffectiveness testified. After noting that he did not fully credit either witness's testimony,[5] Judge Kaplan found:

(1)  that defendant's trial counsel did explain the sentencing guidelines to defendant and that defendant understood with a fair degree of accuracy the sentence he faced if convicted,

(2)  specifically, that defendant had admitted, at the habeas hearing, that he believed he would face 7 to 10 years, "very nearly on the money" as to the actual guidelines range of 78 to 97 months (6½ to just over 8 years),

(3)  that the substance of the plea agreements was in all material respects explained to defendant in Spanish,

**2.**  Defendant was also named in a forfeiture allegation that, as to him, was later dismissed.

**3.**  It appears that defendant came close to accepting the first offer but rejected it because he feared deportation and the government refused to agree not to deport him.

**4.**  The district court recognized that these changes might constitute improper amendments to the petition but chose to hear all defendant's arguments without ruling on the issue, bearing in mind that, as actually happened, the question would become irrelevant if even the amended arguments could not support a grant of habeas.

**5.**  For example, although the trial counsel testified that he had informed defendant of the statutory 5 year mandatory minimum sentence, the government subsequently informed the Court that counsel had told them that he had not explained the minimum but had instead focused on the guidelines.

(4) that defendant's counsel made it clear to defendant that if he chose to stand trial he faced a sentence far greater than that recommended in the plea agreement, and

(5) that defendant's trial counsel "literally begged" defendant to accept the plea agreements.

Accordingly, Judge Kaplan found that, at least as regards counsel's behavior at trial, defendant failed to satisfy either of the two necessary elements for a claim of ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, defendant had not shown that (i) counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms," and (ii) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 693–94, 104 S.Ct. 2052.

As to counsel's appellate performance, although the district court had earlier denied this claim in an order dated December 10, 1997, it nevertheless found after the hearing that his failure to prosecute defendant's direct appeal did fall below the required standard of professional performance. Yet the court also concluded that defendant had failed to identify any meritorious issue on appeal and therefore could not satisfy the prejudice prong of the *Strickland* test. Accordingly, Judge Kaplan dismissed defendant's § 2255 petition in its entirety.

Defendant subsequently submitted a motion to this court requesting a certificate of appealability and *in forma pauperis* status. On November 15, 1999, a panel of this court granted defendant's motion. The panel relied on *McHale v. United States*, 175 F.3d 115 (2d Cir.1999), in which this Court held that where ineffectiveness of appellate counsel (in the form of a failure to prosecute a filed appeal) is shown or conceded, (a) a defendant is entitled to relief without making any showing regarding the merits of the appeal, and (b) the appropriate remedy (where a notice of appeal has been filed) is for the Court of Appeals to re-instate the direct appeal from the conviction and to allow that appeal to proceed as it ordinarily would. *Id.* at 116–17. Accordingly, the panel, in line with *McHale*, vacated the district court's decision denying defendant's § 2255 petition, recalled this court's mandate in the direct appeal, and re-instated that appeal.

Defendant's direct appeal alleging ineffective assistance of trial counsel is therefore now before us. In this appeal, defendant presents, with only minimal variation, the same claims he presented earlier in his § 2255 habeas petition. Specifically, defendant contends:

(1) that his trial counsel failed adequately to explain the sentencing guidelines to him,

(2) that his trial counsel failed adequately to explain the statutory mandatory minimum sentence to him,

(3) that his trial counsel failed adequately to explain the safety valve provision to him,

(4) that his trial counsel failed to correct an error in the calculations underlying the government's second plea offer (specifically, incorrectly placing defendant in criminal history category II rather than I) which caused the recommended sentence to be 27 to 33 months rather than 24 to 30 months, and

(5) that his trial counsel failed adequately to explain that he should accept the plea offer rather than proceeding to trial.

## II. DISCUSSION

Although, following our decision in *Billy-Eko v. United States*, 8 F.3d 111 (2d Cir.1993), we have expressed a "baseline aversion to resolving ineffectiveness claims on direct appeal," *United States v. Williams*, 205 F.3d 23, 35 (2d Cir.2000)

*cert. denied,* — U.S. —, 121 S.Ct. 203, 148 L.Ed.2d 42 (2000) (quoting *United States v. Salameh,* 152 F.3d 88, 160–61 (2d Cir.1998) (per curiam), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999)), we have also clearly acknowledged that this doctrine is no more than a "prudential rule" founded on an awareness of the hurdles facing a defendant with an ineffective assistance claim whose counsel on direct appeal also represented him at trial. *Ciak v. United States,* 59 F.3d 296, 303 n. 3 (2d Cir.1995). Consequently, the *Billy–Eko* rule in no way limits our discretion to hear an ineffective assistance claim on direct appeal.[6] Indeed, when hearing a direct appeal that presents a claim for ineffective assistance of trial counsel, we "may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *Leone,* 215 F.3d at 256.

■ The passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), which severely restricts a defendant's ability to file more than one federal habeas petition, presents a significant reason for us to decline the first option as against the latter two. *See Leone,* 215 F.3d at 256–57. And in this particular case, given both the straightforwardness of defendant's ineffective assistance claim, and that defendant is being ably represented by new counsel on appeal, there are additional grounds for addressing the claim on appeal and without recourse to habeas.

■ We must elect, therefore, between remanding defendant's claim to the district court for further fact-finding and deciding the case on the record now before us. This choice turns, naturally, on whether that record is sufficient. We conclude that, although the trial record taken alone does not supply enough information to enable us to determine the merits of defendant's ineffective assistance claim, the evidentiary hearing that Judge Kaplan held in deciding defendant's habeas petition easily fills the gap. As a result, unless this court's earlier vacatur of the district court's decision on defendant's 28 U.S.C. § 2255 motion also vacated the district court's fact-finding with respect to defense counsel's ineffectiveness at trial, we can address the merits of defendant's claim without further remand.

We find that the prior panel decision vacated only the denial of habeas itself. We reach this conclusion because attributing a limited scope to the vacatur is inherent in the logic of the *McHale* decision on which the vacating panel relied. Thus, *McHale* adopted the unusual remedy of recalling our mandate and reinstating a habeas petitioner's direct appeal in preference to the more common remedy of reversing the district court's denial of habeas and remanding for further proceedings. It did this in order to avoid any "unforeseen complications arising in a renewed district court proceeding." *McHale,* 175 F.3d at 120. In keeping with this underlying principle, we now hold that—in the absence of express indications to the contrary—a vacatur like that made by the earlier panel pursuant to *McHale* encompasses only the denial of habeas itself. And with the exception of factual determinations that are fundamentally influenced by having been made at a habeas proceeding (for example, by being the product of an unusual degree of deference), such a

---

**6.** In *Billy–Eko,* we held *only* that a habeas petitioner (1) who was represented by new counsel on direct appeal and (2) whose ineffective assistance claim is "based solely on the record developed at trial" may not raise, absent a showing of cause and prejudice, an ineffective assistance claim in his § 2255 habeas petition if he did not raise it on direct appeal. *Billy–Eko,* 8 F.3d at 115. *Billy–Eko* therefore neither precludes a defendant from bringing an ineffective assistance claim that does not meet these two conditions on direct appeal nor prohibits us from entertaining such a claim on direct appeal. *See United States v. Leone,* 215 F.3d 253, 256 (2d Cir. 2000).

vacatur does not expunge the factual determinations a district court made along the way to its denial of habeas.

■ At the same time, we also follow the logic of *Leone, see* 215 F.3d at 256–57, and hold that given the vacatur of the district court's disposition of defendant's habeas petition, defendant's next petition for a writ of habeas corpus (should he choose to file one) does not count as a "second or successive petition" for purposes of the limits that the AEDPA places on such petitions.[7] *See* 28 U.S.C. § 2244.

■ With the district court's fact-finding (which is unquestionably not clearly erroneous) in the record before us, we deny defendant's direct appeal alleging ineffective assistance of trial counsel. We do so, moreover, for substantially the reasons presented by the district court in denying defendant's analogous habeas petition. Defendant's counsel explained the sentencing guidelines to him, and defendant had an adequate understanding of the sentence he would face if convicted.[8] Furthermore, defendant's counsel explained the material substance of the plea offer in Spanish and strongly recommended, indeed "literally begged," defendant to accept the agreement rather than proceed to trial. Under the circumstances of this case, even if counsel's explanation of the possible applicability of a five-year statutory mandatory minimum sentence and the potential exceptions to that minimum was not complete, and even if it "fell below an objective standard of reasonableness" under "prevailing professional norms," *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052, we conclude that such a putative

failure would have made no difference as to defendant's decision to reject the plea offer.[9] Accordingly, even if counsel's behavior was in this regard inadequate (a question on which we express no opinion), there is, on the facts of this case, no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Defendant's direct appeal alleging ineffective assistance of trial counsel is, therefore, Denied, and his conviction is Affirmed.

---

7. We note that the government, at oral argument, readily agreed as to the correctness of this treatment.

8. If anything, defendant over-estimated the sentence he faced, believing it to be between 84 and 120 months when it actually was between 78 and 97 months.

9. Counsel's failure to correct the three-month over-statement of the recommended sentencing range in the second plea offer was simi-

larly non-prejudicial. Defendant rejected the first, correct, plea offer not because the recommended sentence was too long but rather because the government refused to agree not to deport him. Given this fact, it seems unlikely that the addition of three months to the recommended sentence (especially when set against a sentencing exposure of 78 to 97 months) was the cause of defendant's rejecting the second plea offer.